## In the Matter of Edward H. London.

Suffolk. March 5, 1998. - May 19, 1998.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, & Ireland, JJ.

*Attorney at Law,* Disbarment, Disciplinary proceeding, Attorney-client relationship. *Administrative Law,* Proceedings before agency, Findings. *Board of Bar Overseers.*

Where S.J.C. Rule 4:01, § 3, requires a lawyer to cooperate with bar counsel investigations and S.J.C. Rule 3:07, Canon 4, DR 4-101 (C) (4), permits a lawyer to reveal client confidences and secrets necessary to defend himself against charges of unethical conduct, an attorney's claim that the obligation of client confidentiality mandated by S.J.C. Rule 3:07, Canon 4, DR 4-101, required him to fabricate evidence and lie to his client and to bar counsel was utterly without merit. [480]

In a bar discipline proceeding in which the attorney was responsible for the protracted investigation, there was no merit to his claim of prejudice from the delay; any delay in the hearing beyond the Board of Bar Overseers' administrative time standards could not have been prejudicial, and delay was in any event not a basis for dismissal of the proceedings by either the board or this court. [480-481]

In a bar discipline proceeding, bar counsel had no obligation to interview or call the attorney's witnesses, and the attorney's failure to call his own witnesses was not an error of bar counsel. [481-482]

In a bar discipline proceeding, there is no requirement that the hearing committee of the Board of Bar Overseers make any particular findings of fact or rulings of law beyond the requirements of Rule 3.47 of the Rules of the Board of Bar Overseers. [482]

In a bar discipline proceeding, there was no impermissible shift of the burden of proof to the attorney: the hearing committee was entitled to believe undisputed evidence and permissible inferences from the facts and was not required to believe the attorney's version of the case. [482-483]

Information filed in the Supreme Judicial Court for the county of Suffolk on January 9, 1997.

The case was heard by *Marshall,* J.

*Vincent R. Brogna* for the respondent.

*Constance Vecchione,* First Assistant Bar Counsel.

Ireland, J. This is an appeal from the judgment of a single

justice of this court disbarring the respondent, Edward H. London, from the practice of law. The respondent claims error because (1) he was required to misrepresent the truth to third parties and bar counsel to protect client confidentiality; (2) the protracted investigation of his case violated the established timelines of the Board of Bar Overseers (board); (3) bar counsel failed to call witnesses who would have undermined bar counsel's case and been beneficial to the respondent in his defense; (4) the hearing committee refused to make a number of findings of law requested by the respondent; (5) bar counsel impermissibly shifted the burden of proof back to the respondent; and (6) the sanction of disbarment was disparate. We affirm the judgment of the single justice.

We recite the findings of the hearing committee, which were adopted by the appeal panel and the board. In the early 1970's the respondent represented a married couple, Anthony and Mary Demetri, in the sale of three properties in Dracut. The respondent agreed to hold the funds from the sale of the properties in escrow and to use the funds to pay the Demetris' creditors. The funds were deposited in six different accounts in the respondent's name, with the majority of the funds ending up in commingled accounts. The respondent kept very few records of his handling of the funds, and could not give an exact accounting of the amounts he was holding on behalf of his clients.

The total amount entrusted to the respondent was $864,082. The respondent disbursed $774,238 to or for the benefit of the Demetris (including $61,550 in legal fees paid to the respondent). In 1989, Mrs. Demetri requested the respondent to present an accounting of all the accounts containing their holdings. The respondent produced three "sheets" as records of the accountings and reported that he had overpaid the Demetris and their creditors by $807. Not satisfied with the respondent's accounting, Mrs. Demetri filed a grievance with bar counsel. In January, 1990, the respondent represented to bar counsel that he had provided his clients with a "full and detailed accounting" of his services and activities and produced the aforementioned sheets to support his claim. When bar counsel asked him to support his accounting, the respondent produced conflicting and false affidavits to justify payments listed on the sheets.

Mr. Demetri died on December 21, 1992. On May 21, 1993, after bar counsel had informed the respondent that the bank records did not support his accounting, and pursuant to a subpoena,

the respondent appeared at the office of bar counsel. At that meeting, for the first time since the beginning of the then three-year investigation, the respondent acknowledged that the sheets contained false entries. He claimed that the entries were falsified at Mr. Demetri's request, and the missing funds were used principally to pay college tuition for a child Mr. Demetri had fathered with a woman other than his wife. In addition, the respondent claimed he also used the remaining funds in question to repay cash loans he and others made to Mr. Demetri. The respondent averred that Mr. Demetri requested that all the aforementioned actions be kept from his wife and, therefore, in the interest of client confidentiality under S.J.C. Rule 3:07, Canon 4, DR 4-101, as appearing in 382 Mass. 778 (1981), he was compelled to represent his accountings falsely both to Mrs. Demetri and bar counsel. The respondent further claimed that from mid-1991 to the spring of 1993 he was unable to recall the fact that the records were false due to memory loss caused by radiation treatment and concomitant trauma and stress, with the result that he made a false report to bar counsel when requested to verify the entries on the sheets.

The hearing committee found that the respondent had commingled and converted funds, made false representations both to his clients and to bar counsel, and charged excessive and unsubstantiated fees. The hearing committee did not credit the respondent's testimony regarding the use of the funds or memory loss. Finding no facts whatsoever in mitigation, the hearing committee found the respondent's false representations to the hearing committee and his reliance on false affidavits and testimony to be matters in aggravation. Further, the hearing committee found the respondent not credible because of his inconsistent factual representations[1] and his "arrogant" and "argumentative" demeanor. Finally, the hearing committee

---

[1] The respondent's credibility was undermined by a number of factors: (1) the respondent frequently changed the characterization of certain items in several of his accountings; (2) none of the respondent's medical records contained any record of memory loss until after the assertion was made to bar counsel; (3) the records the respondent kept were woefully inadequate, such that he could at no time produce an accurate accounting of how much money was in any of the accounts; (4) the respondent could produce no backup documentation, agreement, or billing statements to justify his $61,550 fee; (5) almost all the payments from the Demetris to the respondent were made by direct bank transfers by the respondent; (6) the respondent's financial situation at the time he purported to have lent large sums of money to Anthony Demetri

found the bar counsel's protracted investigation of the complaint to be the fault of the respondent due to his misrepresentations and his failure to preserve records pertaining to the Demetri matter.

The hearing committee found the respondent in violation of S.J.C. Rule 3:07, Canon 1, DR 1-102 (A) (4), (5), and (6), as appearing in 382 Mass. 769 (1981); Canon 7, DR 7-101 (A) (1), (2), and (3), as appearing in 382 Mass. 784 (1981); Canon 9, DR 9-102 (A), (B) (3), and (B) (4), as appearing in 419 Mass. 1303 (1995); and S.J.C. Rule 4:01, § 3, as amended, 415 Mass. 1302 (1993). The hearing committee recommended that the respondent be disbarred. The respondent appealed to an appeal panel of the board and moved to dismiss the petition for discipline. The appeal panel recommended that the board deny the motion to dismiss, adopt the hearing committee's report, and file an information in the county court recommending the respondent be disbarred. The board unanimously adopted the appeal panel's report and recommendation and filed an information with the single justice. The judgment of disbarment followed.

1. *Client confidentiality.* The respondent's claim that the obligation of client confidentiality mandated by S.J.C. Rule 3:07, Canon 4, DR 4-101, as appearing in 382 Mass. 778 (1981), required him to fabricate evidence and lie to Mrs. Demetri and bar counsel is utterly without merit. An attorney may neither fabricate accountings nor make false representations to bar counsel to protect client confidentiality. S.J.C. Rule 4:01, § 3, as amended, 415 Mass. 1302 (1993), requires a lawyer to cooperate with bar counsel investigations, and S.J.C. Rule 3:07, Canon 4, DR 4-101 (C) (4), permits a lawyer to reveal client confidences and secrets necessary to defend himself against charges of unethical conduct. See *In re Robeson*, 293 Or. 610, 625-626 (1982) (lawyer facing charges filed with disciplinary agency by third party may reveal client confidences).

2. *Timeliness of disciplinary action.* The respondent also claims multiple errors as a result of the excessive duration of bar counsel's investigation and the delay of the subsequent hearing. He argues that dismissal of the judgment of disbarment

was insufficient to support such large loans; (7) the timing of the respondent's story was suspicious, as it was not presented until after Anthony Demetri's death; and (8) all the alleged third-party repayments the respondent made to himself and others completely lacked any documentation of the original loans.

is the proper remedy for the prejudice he suffered as a result of bar counsel's protracted investigation and the delayed hearing, which did not occur within the prescribed time period agreed on between bar counsel and the board in their joint memorandum of understanding of January, 1991. We reject these arguments.

First, the hearing committee found that the respondent was responsible for the protracted investigation because of (1) his inadequate record keeping and constant delays during the investigation; (2) his furnishing insufficient and sometimes conflicting documentation to bar counsel; and (3) the complete reversal of the respondent's original version of events following the death of Mr. Demetri. A respondent cannot cause a lengthened investigation and then fairly claim injury from the delay.

Second, although there is no dispute that the petition was not filed within the time standards, the time standards are internal policies for the administrative convenience of the board. They do not appear in S.J.C. Rule 4:01 or in the board's rules. Time standards are administrative in nature and confer no rights on the parties. Bar counsel's brief notes that the board has maintained this policy, but that "for this very reason [time standards] were never promulgated as amendments to the Rules of the Board of Bar Overseers."

Finally, even if the respondent's claim had some merit, delay cannot be a basis for dismissal. The proposition that delay can be a basis for dismissal has been consistently rejected by both this court and the board. See, e.g., *Matter of Elias*, 418 Mass. 723, 724 (1994); *Matter of Abagis*, 386 Mass. 1001 (1982); *Matter of Kipp*, 383 Mass. 869, 870 (1981).

3. *Failure to call witnesses.* The respondent claims error because bar counsel failed to call four witnesses essential to the respondent's defense. This claim is baseless. Three of the four witnesses were identified as the respondent's witnesses, and the fourth witness, Mr. Demetri, did not become material to the case until after his death.

Bar counsel has no obligation to interview the respondent's witnesses. The respondent attempts to analogize bar counsel to a criminal prosecutor who is bound by S.J.C. Rule 3:08, PF 7 (b), as appearing in 382 Mass. 800 (1981), and may not "intentionally . . . avoid pursuit of evidence because he believes it will damage the prosecution's case or aid the accused." *Id.* Bar counsel in fact has no similar obligation, and,

even if he did, bar counsel did not violate it here. See generally *Matter of Eisenhauer*, 426 Mass. 448, 454 (1998) (special protections afforded to criminal defendant are not applicable in bar discipline proceedings as they are administrative in nature and respondent is not entitled to full panoply of rights afforded criminal defendant). It is not shown that bar counsel deliberately endeavored to avoid pursuing evidence that might damage his case. Furthermore, the respondent had an opportunity to call his own witnesses and his failure to do so is not an error on the part of bar counsel.

4. *Failure to render rulings of law.* The respondent claims that the hearing committee's failure to make various rulings of law, submitted by him in various requests concerning general ethical duties, was error.

There is no requirement in bar discipline proceedings that any such ruling be made. The hearing committee properly applied Rule 3.47 of the Rules of the Board of Bar Overseers (1998), which requires a hearing committee to state separately its findings of facts and conclusions of law. Beyond that, a hearing committee is not bound by rule or by law to make any specific findings or rulings requested by the respondent in the course of a hearing. The respondent erroneously attempts to apply a rule such as Mass. R. Civ. P. 64A, 423 Mass. 1410 (1996), which provides for the filing of such requests, to require a District Court judge to make rulings of law or findings of facts. No such rule is applicable here.

5. *Burden of proof.* The respondent claims that bar counsel improperly shifted the burden of proof to him, by showing the respondent's testimony to be false rather than by proving his case by a preponderance of the evidence. The respondent claims the shift of the burden to him required him to prove his version of the facts true.

There was no shifting of the burden of proof here. It is undisputed that the respondent took possession of $864,082 in client funds, and disbursed $774,238 to or for the benefit of the Demetris. It is also undisputed that of the remaining $89,000, the respondent paid to himself $66,000, with the remaining $23,000 disbursed to third parties, in addition to his fees of $61,550. The respondent's claim that Mr. Demetri requested him to issue the funds in no way affects bar counsel's case as the respondent's claim that the false reportings were at the request of his client is not a defense to his code violations.

Furthermore, the intent to deprive is a permissible inference from the false accountings presented by the respondent in addition to the other circumstantial evidence affecting the credibility of the respondent.

There was no proof that the respondent and the third parties had any entitlement to $89,000 of the Demetri money unless the hearing committee believed the respondent's claim that he was instructed by the now deceased Mr. Demetri to repay cash loans made by the respondent and the third parties. The hearing committee was under no obligation to believe the respondent's version of the facts or to credit the respondent with a defense to the charges as a result of his explanation. Bar counsel did not cause an impermissible shift of the burden of proof to the respondent.

6. *Other issues.* The respondent's attempt to incorporate issues originally presented within memoranda intended for previous proceedings, and not properly presented before this court, is not appropriate. Consequently, we do not reach any issues that the respondent does not raise in his brief and attempts to raise entirely through incorporation of such memoranda.[2] Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975). See generally *Commonwealth* v. *Ramos*, 402 Mass. 209 (1988); *Bonan* v. *Boston*, 398 Mass. 315 (1986); *Commonwealth* v. *McLeod*, 367 Mass. 500 (1975); *Houghton* v. *Rizzo*, 361 Mass. 635 (1972) (court need not consider arguments improperly presented).

*Judgment affirmed.*

---

[2]This includes the discussion whether the recommended sanction was disparate.